IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 14, 2004 Session

# IN RE ZAYLEN R.

**Appeal from the Juvenile Court for Wilson County**
**No. 02JWC257      Robert P. Hamilton, Judge**

**No. M2003-00367-COA-R3-JV - Filed September 27, 2005**

This appeal involves a dispute over the custody of a non-marital child. The child's father requested the Wilson County Juvenile Court to designate him as the child's primary residential parent because of the mother's history of substance abuse. Following a bench trial, the juvenile court designated the mother as the child's primary residential parent and established a visitation schedule for the father. The court also ordered the father to pay child support and to maintain insurance for the child. The father asserts on this appeal (1) that the juvenile court's findings of fact were insufficient, (2) that the evidence does not support designating the mother as the child's primary residential parent, and (3) that the court based its decision on the outmoded tender years doctrine. We affirm the juvenile court's order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

Frank M. Fly and Aaron S. Guin, Murfreesboro, Tennessee, for the appellant, Seth H.

Amanda G. Crowell, Lebanon, Tennessee, for the appellee, Erin R.

## OPINION

### I.

Seth H. and Erin R. met in November 2000 while they were students at Middle Tennessee State University. Erin R. learned that she was pregnant after they had been dating for approximately five months. The couple ended their relationship a few months later. Erin R. gave birth to Zaylen R. on December 12, 2001. She continued to attend school and to work part-time. Because Erin R. continued to live with her parents, Zaylen R. was cared for by her grandparents while Erin R. was at school or working. At least initially, Erin R. permitted Seth H. to visit Zaylen R. whenever he desired, and Seth H. sent Erin R. monthly checks to help support their child.

The parties' cooperative relationship evaporated in June 2002. Seth H. became concerned that Erin R.'s socializing and drinking with friends might endanger their daughter. He began

checking on Erin R. by calling her in the middle of the night. On one occasion, Seth H. had a confrontation with Erin R.'s father over the telephone. Eventually, the occasions of Seth H.'s visitation with Zaylen R. became contentious to the point were Seth H. was denied visitation.

On July 8, 2002, Seth H. filed a complaint in the Wilson County Juvenile Court to establish parentage and to obtain joint custody of Zaylen R. Erin R. answered and counterclaimed for designation as the child's primary residential parent. On the day before the hearing, Seth H. moved to amend his complaint to request that he be designated as Zaylen R.'s primary residential parent. In support of his motion, Seth H. asserted that he had learned through discovery that Erin R. had a history of substance abuse.

During the hearing held in January 2003, Seth H. testified that he had earned his degree and that he was employed by Federal Express earning $21,736 per year. He also testified that he was living in an apartment adjacent to the house where his mother and grandparents lived and that his mother and grandparents would be readily available to help care for Zaylen R. Seth H. also emphasized that he had voluntarily paid child support consistent with the Tennessee Child Support Guidelines since Zaylen R.'s birth and that he had tried to have as much visitation with her as possible.

Erin R. testified that she was still pursuing her college degree and that she planned to graduate in the Fall of 2004. She stated that she was working part-time at a restaurant and that she was earning approximately $8,213 per year. She also testified that her sister and parents were available to watch Zaylen R. while she was working or at school.

Both parties also presented evidence about their use of alcohol and illegal drugs. Seth H. put on proof that Erin R. had used cocaine on at least three occasions, had smoked marijuana at least fifteen times, and had experimented with Ecstacy twice. Erin R. admitted that she used drugs before she discovered that she was pregnant. Seth H. also conceded that he had smoked marijuana when he was a minor and that he had never seen Erin R. use drugs while they were dating or afterward.

In its January 2003 order, the juvenile court found that Seth H. was Zaylen R.'s legal father. The court also established Seth H.'s support obligation and directed that Zaylen R.'s name be changed to Zaylen H.[1] That court also designated Erin R. as Zaylen R.'s primary residential parent. While the court found that both parties loved the child and exhibited good parenting skills, it determined that Zaylen R.'s best interests would be served by placing her in her mother's custody, despite Erin R.'s past behavior.

## II.

Seth H.'s principal argument on appeal is that the trial court erred by not designating him as Zaylen R.'s primary residential parent. Specifically, he asserts that the trial court's findings are so meager that they are not entitled to Tenn. R. App. P. 13(d)'s presumption of correctness and that a

---

[1]Even though Zaylen R.'s name has been changed to Zaylen H., we will continue to refer to her as Zaylen R. in this opinion.

de novo review of the record will support his claim that Zaylen R.'s interests would be served best by designating him as her primary custodial parent. He also insists that the trial court's decision was dictated by its reliance on the outmoded "tender years doctrine." We find no merit in these claims.

## A.
### The Juvenile Court's Findings of Fact

Findings of fact facilitate appellate review, *Kendrick v. Shoemake*, 90 S.W.3d 566, 571 (Tenn. 2002), and enhance the authority of the court's decision by providing an explanation of the trial court's reasoning. Despite their value, trial courts are not required either by rule or by statute to make findings of fact in cases of this sort. Juvenile courts are required to make findings of fact only when requested by the parties. Tenn. R. Civ. P. 52.01.[2]

Because findings of fact are not required, a court does not commit reversible error when it fails to make findings of fact in the absence of a request pursuant to Tenn. R. Civ. P. 52.01. *Bruce v. Bruce*, 801 S.W.2d 102, 104 (Tenn. Ct. App. 1990). However, when courts fail to make findings of fact, we will review the record ourselves to determine where the preponderance of the evidence lies without the presumption of correctness that findings of fact otherwise enjoy under Tenn. R. App. P. 13(d). *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997); *Elliott v. Elliott*, 149 S.W.3d 77, 83 (Tenn. Ct. App. 2004).

Seth H. insists that the juvenile court's findings of fact in this case were so inadequate that they should be not accorded Tenn. R. App. P. 13(d)'s presumption of correctness. We do not know whether the juvenile court made findings of fact from the bench because the appellate record does not contain a transcript of the January 2003 hearing. Thus, the only findings of fact contained in the record are those found in the juvenile court's final order. While these findings are sparse, we decline to find that they are so inadequate that they should be stripped of Tenn. R. App. P. 13(d)'s presumption of correctness. Accordingly, we will presume that the findings of fact that the juvenile court did make, such as they are, are correct unless Seth H. succeeds in convincing us that the evidence preponderates against them.

## B.
### The Comparative Fitness of the Parties

We now turn to Seth H.'s argument that the trial court erred by finding that it would be in Zaylen R.'s best interests to designate him as her primary residential parent. He asserts that Erin R.'s past conduct is a reliable predictor of her future conduct and, therefore, Zaylen R. would be better off in his custody. The record does not bear out this argument.

Custody and visitation arrangements are among the most important decisions confronting the courts. *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001). We must strive to devise custody arrangements that promote the development of the children's relationship with both parents and

---

[2]The Tennessee Rules of Civil Procedure govern parentage proceedings in juvenile court. Tenn. R. Juv. P. 1(b).

interfere as little as possible with post-divorce family decision-making. *Aaby v. Strange*, 924 S.W.2d 623, 629 (Tenn. 1996); *Taylor v. Taylor*, 849 S.W.2d 319, 331-32 (Tenn. 1993). The needs of the children are paramount, while the desires of the parents are secondary. *Lentz v. Lentz*, 717 S.W.2d 876, 877 (Tenn. 1986). Custody decisions should never be used to punish or reward the parents, *Turner v. Turner*, 919 S.W.2d 340, 346 (Tenn. Ct. App. 1995); *Long v. Long*, 488 S.W.2d 729, 733 (Tenn. Ct. App. 1972), but rather should promote the children's best interests by placing them in an environment that will best serve their physical and emotional needs. *Luke v. Luke*, 651 S.W.2d 219, 221 (Tenn. 1983).

Courts customarily devise custody and visitation arrangements by engaging in a comparative fitness analysis that requires them to determine which of the available custodians is comparatively more fit than the other. *Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001); *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). This "comparative fitness" analysis does not measure the parents against the standard of perfection because the courts are pragmatic enough to understand that perfection in marriage and parenting is as evanescent as it is in life's other pursuits. *Earls v. Earls*, 42 S.W.3d 877, 885 (Tenn. Ct. App. 2000); *Rice v. Rice*, 983 S.W.2d 680, 682-83 (Tenn. Ct. App. 1998). Rather, the analysis requires the courts to determine which of the parents, in light of their present circumstances, is comparatively more fit to assume and discharge the responsibilities of being the primary residential parent.

Custody and visitation decisions often hinge on subtle factors, including the parents' demeanor and credibility. *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). Accordingly, appellate courts are reluctant to second-guess a trial court's decisions. It is not our role to "tweak [these decisions] . . . in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding custody or visitation should be set aside only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge v. Eldridge*, 42 S.W.3d at 88.

The juvenile court's order reflected that it compared the fitness of both Seth H. and Erin R. when determining who should be Zaylen R.'s primary custodial parent. The court considered their educations, their incomes, their living arrangements, their family support, and their personal conduct. The court did not find that Seth H. was unfit, but rather that Erin R. was comparatively more fit because the child had been in her custody since birth and because Erin R. had a consistent track record of being a good parent since her daughter was born.[3] We find no basis in this record to second-guess the juvenile court's decision to designate Erin R. as the primary residential parent.

## C.
### Reliance on the Tender Years Doctrine

As a final matter, Seth H. argues that the juvenile court must have relied on the tender years doctrine because the record contains no other support for its decision. The trial court never stated

---

[3]The court considered Erin R.'s prior drug use but did not view it as a disqualifying factor because there was no evidence that Erin R. had abused drugs or alcohol since Zaylen R.'s birth.

or implied that it was relying on the tender years doctrine, and we have determined that the evidence in the record amply supports that court's decision to designate Erin R. as Zaylen R.'s primary residential parent.

The tender years doctrine was based on the stereotypical assumption that children of tender years should be placed in their mother's custody. *See Weaver v. Weaver*, 37 Tenn. App. 195, 202, 261 S.W.2d 145, 148 (1953). This court devalued this doctrine over twenty years ago and relegated it to just one of many factors for courts to consider when making custody decisions. *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983). The current statute setting out the factors to be considered in custody cases does not mention, or contain even a reflection of, the tender years doctrine. Tenn. Code Ann. § 36-6-106(a).

Based on our examination of the record and the juvenile court's order, we have concluded that the court's decision was based primarily on the fact that Zaylen R. had been in Erin R.'s custody since she was born in 2001 with no apparent ill effect. Children thrive in stable environments. Tenn. Code Ann. § 36-6-106(a)(3) (2001); *Aaby v. Strange*, 924 S.W.2d at 627; National Interdisciplinary Colloquium on Child Custody, *Legal and Mental Health Perspectives on Child Custody Law: A Deskbook for Judges* § 5:1, at 51 (1998). Accordingly, the courts favor maintaining existing custody arrangements as long as they are working. *Taylor v. Taylor*, 849 S.W.2d at 332; *Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999). The continuity of Zaylen R.'s placement is a weighty, perhaps even decisive, factor in Erin R.'s favor.

## III.

We affirm the order of the juvenile court designating Erin R. as Zaylen R.'s primary residential parent and remand the case for whatever further proceedings may be required. We deny Erin R.'s request for attorney's fees and tax the costs of this appeal to Seth H. and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.